UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 2FL ENTERPRISES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOUSTON SPECIALTY<br>INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C17-676 MJP<br><br>ORDER ON MOTION FOR<br>PARTIAL SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 16);

2. Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 19);

3. Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 22);

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is GRANTED; Plaintiff is granted summary judgment on its claims that Defendant breached its duty to defend and that the breach constituted an act of bad faith on Defendant's part.

## I. Background

Plaintiff (a construction company) was covered by a series of commercial general liability ("CGL") policies issued by Houston Specialty Insurance Company ("HSIC"), for periods running from

- August 23, 2011 to August 23, 2012 ("the 2011 policy")
- August 23, 2012 to August 23, 2013 ("the 2012 policy")
- August 23, 2015 to August 23, 2016 ("the 2015 policy")

On June 27, 2012, Plaintiff entered into a contract with MCS for the improvement of a building called the Williams Court Apartments ("Williams Court"). In July of 2013, MCS contacted Plaintiff regarding some leaks in the building. Although Plaintiff's investigation lead it to believe it was not at fault, it made some repairs and recommended some further measures to address the problem. Afterwards, Plaintiff was informed that the leaks continued.

In light of the unresolved nature of the problem, Plaintiff tendered a claim to Defendant on March 1, 2016. Defendant delegated investigation of the claim to a third-party administrator, Tri-Star Risk Management ("Tri-Star"), which contacted Plaintiff's counsel on March 3, requesting information and documents. (Davis Decl., Dkt. No. 18-1, Ex. A at 16 of 26.) Plaintiff provided documents and information on March 7. (Id. at 12 of 26.)

On April 20, 2016, MCS filed suit against 2FL, alleging that "the Williams Court Apartments" had suffered water damage resulting from 2FL's work. (Floren Decl., Dkt. No. 17-

1, Ex. B at 80-85 of 115.) Plaintiff contacted Defendant, which acknowledged tender of the lawsuit (but nothing else) on April 26. (Id., Ex. C at 87 of 115.) For approximately the next five months, Defendant took no position regarding defense or coverage and hired no counsel to defend Plaintiff. (Dkt. No. 17, Floren Decl. at ¶ 15.) Meanwhile, on May 17, 2016, MCS was granted an order of default (Id., Ex. E at 106-108 of 115), an action of which Plaintiff received no notice. (Id. at ¶ 21.)

On September 23, 2016, Defendant sent a letter to Plaintiff denying all coverage. The letter contained multiple grounds for Defendant's position that no coverage or obligation to defend existed. (Id., Dkt. No. 17-1, Ex. D at 90-105 of 115.)[1] Following the denial of coverage or defense, Plaintiff tendered defense of the underlying lawsuit to another insurer, International Insurance Company of Hannover SE ("Hannover"), which accepted the tender. (Id. at ¶ 18.)

On March 17, 2017, the court in the underlying litigation granted MCS's motion for default judgment in the amount of $452, 905.51 plus fees and costs. (Id., Ex. F at 109-111 of 115.) Plaintiff received notice of the default judgment via letter from counsel for MCS on March 21, 2017 and notified both Defendant and Hannover. (Id. at ¶ 21.) Hannover assigned an attorney (Justin Bolster of Preg O'Donnell & Gillett) to the case. (Id. at ¶ 22.) Without notice to Plaintiff or Plaintiff's current counsel, Defendant contacted Hannover's lawyer in April of 2017 and offered to join in Plaintiff's defense. (Id. at ¶ 23.)

---

[1] As it did in its letter acknowledging tender of defense in April 2016, Defendant included language in its declination letter which could be read as a form of "reservation of rights:"

> HSIC's position as to its coverage obligations for this matter are premised upon presently known facts and is, by necessity, subject to change as additional allegations and facts are developed. HSIC reserves the right to revise its position and raise any other issue(s) of coverage defenses without prejudice, waiver or estoppel.

(Dkt. No. 17-1, Ex. D at 104 of 115.) As discussed *infra*, the Court finds that, in the wake of Defendant's breach of its duty to defend and/or cover the claims against Plaintiff, this language has no effect.

1  In May of 2017, apparently believing that Hannover's counsel would not adequately represent Defendant's interests, Defendant decided to retain its own attorney. (Davis Decl., Dkt. No. 18-1, Ex. A at 4 of 26.) HSIC informed Plaintiff by letter dated May 8, 2017 of that decision. (Id., Ex. B at 20-22 of 26.) Plaintiff responded the following day by rejecting Defendant's offer of defense. (Id., Ex. C at 24-26 of 26.)

On June, 5, 2017, the default judgment in the underlying litigation was vacated (Floren Decl., Dkt. No. 17-1, Ex. G at 110) and the MCS lawsuit is proceeding with Plaintiff represented by Hannover's counsel.

## II. Discussion

Plaintiff's motion seeks summary judgment on two issues: (1) whether Defendant owed and breached a duty to defend and (2) if so, whether that breach constitutes actionable bad faith.

### A. Duty to defend

Washington law governs this diversity action. In this state, "the duty to defend is different from and broader than the duty to indemnify." Amer. Best. Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 404 (2010). All that is required to trigger the duty to defend is the "potential" for liability "and whether allegations in the complaint *could conceivably* impose liability on the insured." Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 60 (2007)(emphasis in original). The allegations in the complaint must be liberally construed in favor of coverage (Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 760 (2002)) and, "if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." Amer. Best Food, *supra* at 413.

In the face of this liberal doctrine (and its own about-face), Defendant still maintains that it did not breach its duty to defend. It first argues that it is insulated from liability for breach because it relied on information provided by Plaintiff as the basis for its original declination. This is in reference to the fact that, following the tender by Plaintiff on March 1, 2016, Defendant responded two days later with a request for further information and documents. (Davis Decl., Dkt. No. 18-1, Ex. A at 16 of 26.) Plaintiff provided documents and information on March 7 (id. at 12 of 26) – among that information was the website address of the King County Assessor's Office.

In looking up the property in question on the Assessor's website, Tristar found the "present use" listed as "Condominium: Residential." Plaintiff's policy had an exclusion for condominiums and Defendant used this information as one of its justifications (many months later) for finding no coverage and no duty to defend. There are several problems with this rationale. The first is that Williams Court is not a condominium complex, it is an apartment building (which is covered under the policy).

The second problem is that, under Washington law, an insurer is not permitted to utilize information extrinsic to (a) the complaint or (b) the insurance policy to arrive at a decision regarding denial of a tender of defense. "The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend – it may do so only to trigger the duty." Woo, *supra* at 54. (As noted *supra*, the complaint described the building as the "Williams Court Apartments.")[2]

---

[2] This also disposes of Defendant's assertion that (1) information Plaintiff supplied regarding the dates for the MCS job ("8/23/12 – 11/20/12" – which are after the expiration of the 2011 policy) or (2) Plaintiff's failure to respond to its requests (in April and September) to produce any other information which might aid in its coverage determination somehow justifies their refusal to defend. This situation is a little unusual in that the extrinsic evidence was supplied/obtained before the complaint was filed. However, Defendant has cited no authority that this fact alters the fundamental doctrine that the decision of whether to defend must be based on the complaint and policy alone.

1       Lastly, as regards Defendant's argument that somehow the fact that Plaintiff had supplied the link to this information insulates it from breach (which, even if the information had been accurate, would not – based on Woo – be the case), Plaintiff produced documentary evidence that Tristar had done the King County Assessor website research on its own prior to Plaintiff relaying the link to the information. (*See* Davis Decl., Ex. A at 15.)

      Defendant's attempts to cite the MCS complaint as justification do not fare any better. In its letter declining to defend, the insurer cites allegations from the complaint that "the leaking was admitted to and solved as of August 6, 2014 yet continued after that date" as evidence that MCS's claims fell after the 2011 and 2012 policies but before the 2015 policy. (*See* Dkt. No. 19, Response at 13.) But what the complaint says is that 2FL had "claimed" to have solved the leak (Dkt. No. 17-1 at 78 of 110) – not that it had actually been resolved. Plus the complaint goes on to say 2FL "failed to remedy the water intrusion issues." (Id.; a fact which even Defendant acknowledges with its language "*yet continued after that date.*") The damage could well have continued into the 2015 policy period, and Defendant's refusal to entertain that possibility is yet another way in which it failed to liberally construe the allegations as it is required to do.

      On the basis of the undisputed facts and the state of the law, the Court has no other option than to conclude that Defendant erred in declining to defend at the outset and breached its duty thereby. While it may be arguable whether the duty to defend arose at the point (pre-litigation) when Plaintiff informed HSIC that a dispute with MCS had arisen regarding damage to Williams Court, it is beyond question that the initiation of litigation triggered the duty. "In Washington, the duty to defend arises upon the filing of a covered complaint." Griffin v. Allstate Ins. Co., 108 Wn.App. 133, 139 (2001).

1    Even Defendant would seem to have reached the same conclusion, as evidenced by its

2 turnaround over a year after the complaint had been filed. Without really admitting that there

3 was a breach, however, Defendant claims that any breach was "cured" by its later offer to

4 participate in 2FL's defense (first, with Hannover's counsel, then later with separate counsel of

5 its choosing).

6    As Plaintiff's insurance policies with Defendant are contracts, the Court analyzes this

7 argument under contract theory. "[I]t is a basic principle of contract law that once one party to a

8 contract breaches the agreement, the other party is no longer obligated to continue performing

9 his or her contractual obligations." 1 Allan D. Windt, INSURANCE CLAIMS & DISPUTES,

10 §3:10. Defendant argues that Plaintiff cannot "create" a breach of contract by refusing its

11 belated offer to defend, citing the contract provision calling for the insured to cooperate with the

12 insurance company. But Defendant had already breached the contract by the point in time it

13 argues that Plaintiff was required to cooperate. "An insured… should no longer be bound by

14 contractual obligations if the insurer breaches [] its duty to defend the insured…" Id., §3:11.

15    The insurer argues further that, in Washington, "an insurer defending under a reservation

16 of rights maintains a right to control the defense." (Response at 16.) Ignoring for the moment

17 that the ruling it cites (Johnson v. Continental Cas. Co., 57 Wn.App. 359, 361-63 (1990)) has

18 nothing to do with the issues in this case, Defendant cannot characterize its position as

19 "defending under a reservation of rights" when it specifically declined to defend.[3] Defendant's

---

[3] Neither side devotes any briefing to the question: What is the effect of Defendant's "reservation of rights" which it included as boilerplate language both in its initial April 2016 response to Plaintiffs and then again in its declination letter of September 2016? (*See* fn. 1 *supra*.) The Court finds that the effect of that declaration must be analyzed from the point in time it was declared; i.e., if Defendant had no right to decline to defend, it is a breach that cannot be "undone" or "cured" by language saying "if we later discover we are wrong, we reserve the right to erase our breach." To give curative effect to such language would mean that an insurance company could *never* be in breach under these circumstances until the final judgment was entered against the insured and any possibility of its participation in the defense had been irreversibly extinguished.

position is further undercut by the fact that it based its "reservation on rights" in the declination letter on "further discovery of additional facts and allegations." Based on the evidence provided to the Court, HSIC's reversal in April 2017 was not based on any "additional facts and allegations" other than the fact -- legally insignificant to the issues of defense and coverage -- that a default judgment had been obtained against its insured.

Defendant attempts to cite a California case for the proposition that a delay in assuming the defense will not necessarily extinguish an insurer's right to control the defense if it decides at a later date to defend. Travelers Prop. Case. Co. of Am. v. Centex Homes, 2013 US. Dist. LEXIS at *21 (N.D. Cal. Apr. 8, 2013). This case does not support the insurance company's position. In the first place (as pointed out *supra*), Defendant didn't merely "delay" – it specifically declined to defend. In the second place (as Plaintiff points out), the Centex court reversed itself on this very issue on a motion for reconsideration, later ruling that

> A failure to provide counsel or to guarantee the payment of legal fees immediately after an insurer's duty to defend has been triggered constitutes a breach of the duty to defend, even if the insurer later reimburses the insured.
> * * * *
> Accordingly, the Court finds that Travelers breached its duty to defend by failing to provide Centex with a defense at least 30 days after the complaints were filed… Upon breaching its duty to defend, Travelers also lost its right to control Centex's defense.

Travelers Indem. Co. of Connecticut v. Centex Homes, 2015 WL 5836947 at *5 (N.D.Cal. Oct. 7, 2015)(citations omitted).[4] While there are apparently no Washington cases on point, other jurisdictions are in accord. *See* Bellsouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So.2d 668, 672 (2006)("[T]he right to intervene is lost by the insurer by its wrongful refusal to

---

[4] The Court is troubled by Defendant's failure to note in its briefing that the ruling it was citing had been reversed by the court which had issued the ruling, and invites Defendant to provide any explanation it has for this omission.

defend;" *citing* Carrousel Concessions, Inc. v. Florida Ins. Guaranty Assoc'n, 483 So.2d 513 at 517-18 (1986)).

Plaintiff is entitled to partial summary judgment finding a breach of the duty to defend by HSIC.

B. Bad faith

1. *Legal standard*

An insurer's breach of its contractual duty to defend can also engender liability for bad faith. Unigard Ins. Co. v. Mut. Of Enumclaw Ins. Co., 160 Wn.App. 912, 918 (2011). In Washington, "[a] denial of coverage that is unreasonable, frivolous, or unfounded constitutes bad faith." Wright v. Safeco Ins. Co. of America, 124 Wn.App. 263, 279 (2004). There is no requirement of fraud or other intent for a finding of bad faith. Sharbono v. Universal Underwriters Ins. Co., 139 Wn.App. 383, 410-11 (2007). For its part, Defendant argues that, in Washington, there is no liability for bad faith where the failure to defend was based upon a reasonable interpretation of the policy. Transcontinental Ins. Co. v. Wash. Pub. Utilities Districts, 111 Wn.2d 452, 470 (2002).

2. *Evidence of bad faith*

Evidence of bad faith abounds here. There are a number of instances throughout the chronology of this event where Defendant acted in contravention of Washington law. The first and most egregious is its use of extrinsic evidence (e.g., the determination, based on the King County Assessor's website, that Williams Court was a condominium building) to deny a defense to its insured– a violation of Woo (161 Wn.2d at 54). Additionally, HSIC claimed in its declination letter that Plaintiff began and concluded its work outside of the coverage periods, and

that Plaintiff's subcontractors did not maintain CGL insurance (Floren Decl., Ex. D at 91 and 99 of 115), information which is found nowhere in the complaint.

Further, a portion of Defendant's rationale for declining to defend was based on a legal conclusion that was in violation of Washington law. The declination letter stated that the breach of contract at issue in the underlying MCS lawsuit was an "intentional act" which removed the occurrence from policy coverage. (Id. at 94 of 115.) In fact, Washington law holds that construction defects are *per se* "accidental" (unless there is proof of intent, which the MCS complaint did not allege) and thus these kinds of contractual breaches cannot constitute "intentional acts." Queen City Farms v. Central Nat'l Ins. Co., 125 Wn.2d 50, 70 (1994).

Plaintiff also attempts, less successfully, to establish bad faith based on allegations of Washington Administrative Code ("WAC") improprieties. Although violations of Washington insurance regulations are evidence of bad faith (Seaway Properties, LLC v. Fireman's Fund Ins. Co., 16 F.Supp.3d 1240, 1253 (W.D. Wash. 2014)), the Court finds the evidence presented by Plaintiff of this type of violation is not strong. Plaintiff cites WAC 284-30-330(i), which forbids the misrepresentation of pertinent facts, in reference to Defendant's insistence that Williams Court was a condominium complex not an apartment building. "Misrepresentation" carries a requirement of intent that Plaintiff has not established. There may have been an element of negligence in HSIC's failure to exercise the care required to discover the truth about nature of the building, but there are neither allegations nor evidence of fraudulent misrepresentation of facts (and Plaintiff has cited no case law to support a finding that a mistake born of negligence constitutes the requisite "misrepresentation").

Additionally, Plaintiff claims that Defendant's delayed response to their tender constitutes a violation of WAC 284-30-330(3), which requires insurance companies to "adopt

and implement reasonable standards for the prompt investigation of claims arising under insurance policies." Plaintiff presents no proof whatsoever that Defendant has failed to adopt such standards.

Nevertheless, the Court has no difficulty finding that Defendant's actions in denying a defense to Plaintiff were both unreasonable and unfounded. However, the "bad faith" inquiry does not stop there.

### 3. *Rebuttable presumption of harm*

"[A] showing of harm is an essential element of an action for bad faith handling of an insurance claim." Safeco Ins. Co. v. Butler, 118 Wn.2d 383, 389 (1992). The Washington Supreme Court in Butler further held that, once an insured meets its burden of establishing bad faith, a "rebuttable presumption of harm" is imposed. Id. at 390. Plaintiff has met its burden of establishing bad faith and it is up to HSIC to rebut the presumption of harm that arises from that showing.

Defendant argues that the facts that (1) the lawsuit is still ongoing (i.e., there has been no ultimate determination of Plaintiff's liability); and (2) the default judgment was ultimately vacated rebut any presumption of harm from its actions. The insurer also faults Plaintiff for failing to provide evidence of any "potential harms" actually surfacing as a result of the existence of the default judgment.

This misstates the burden of proof in this situation – it is clearly incumbent upon HSIC to rebut the presumption of harm that has been created by its bad faith. The Court can conceive of numerous harms underlying a lengthy delay which culminates in a non-meritorious decision to deny coverage – e.g., the expenditure of time and effort to find another carrier to defend against the claims, the damage to financial credit that the existence of a default judgment and/or

judgment lien (even a temporary one) can wreak on a business enterprise, and the damage to credibility and goodwill that the existence of such a judgment can impose (even if it is ultimately withdrawn). Defendant has done little or nothing to dispel the presumption of harm which its behavior has created, and Plaintiff is entitled to summary judgment on that issue.

## III.     Conclusion

The material facts here are not in dispute. Defendant's delay and ultimate denial of defense, unsupported by evidence from the complaint in its insured's underlying litigation or its own policy with Plaintiff, are as a matter of law a breach of its duty to defend. The fact that both the delay and the denial were unfounded and unreasonable dictate a finding of bad faith which is unmitigated by the insurer's later change of heart. This ruling carries with it a presumption of harm which Defendant has failed to overcome, and on that basis Plaintiff is also entitled to a grant of its request for a summary judgment finding of bad faith based on the breach of Defendant's duty to defend.

The clerk is ordered to provide copies of this order to all counsel.

Dated: February 5, 2018.

Marsha J. Pechman
United States District Judge